IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Bernard Bostic | Crim. No. 4:08-cr-00060-001-TLW-1 |
| v. | **ORDER** |
| United States of America | |

This matter comes before the Court on Defendant Bernard Bostic's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 253. For the reasons below, his motion is denied.

## PROCEDURAL BACKGROUND

In September 2007, Bostic and two codefendants committed three violent armed robberies in Darlington, South Carolina. *See generally* Presentence Investigation Report ("PSR"), ECF No. 117. Specifically, Bostic robbed a convenience store, a gas station, and a restaurant. *Id.* During each of these robberies, Bostic and his codefendants brandished firearms and threatened to harm employees and customers. Bostic was named in each count of the resulting seven count Indictment. ECF No. 1. The Indictment charged Bostic with three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1), three counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a). *Id.*

On September 29, 2008, Bostic pled guilty to Counts 1 and 5 of the Indictment, which charged him with one count of Hobbs Act robbery and one count

of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). ECF No. 95. In exchange for his plea, the Government agreed to dismiss five of the seven counts. *Id.* Dismissed Counts 2 and 3 charged Bostic with violent offenses, specifically, Hobbs Act robbery. *Id.*; ECF No. 1. Dismissed Counts 4 and 6 charged him with violations of § 924(c); and Count 7, charged him with being a felon in possession—all very serious charges. ECF Nos. 1 & 95.

Bostic's plea agreement was made pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure and called for a stipulated sentence of 25 years imprisonment. *Id.* The Court accepted the plea agreement and imposed a sentence of 25 years imprisonment (216 months as to Count 1, and 84 months as to Count 5, said sentences to run consecutively). ECF No. 119. Bostic appealed his sentence, and the United States Court of Appeals for the Fourth Circuit affirmed this Court's judgment. ECF Nos. 122 & 134.

Bostic filed his first motion for compassionate release in November 2020. ECF No. 248. On November 30, 2020, the Court entered a text order directing Bostic to supplement the record to show he had exhausted his administrative remedies. ECF No. 249. Bostic did not supplement the record as requested, and the Court dismissed his first motion without prejudice for failure to exhaust his administrative remedies on January 14, 2021. ECF No. 251.

After exhaustion, Bostic filed the present motion for compassionate release on February 22, 2022. ECF No. 253. The Government opposes Bostic's motion. ECF No. 264. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Bostic's motion and the Court's decision, the Court will first review the offense conduct establishing Bostic's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

### I.    THE OFFENSE CONDUCT

This case involves three violent armed robberies committed by Bostic and his codefendants in September 2007. All three robberies were of businesses in Darlington County, South Carolina. Each robbery involved Bostic and his codefendants threatening to kill victims with firearms. Paragraphs 10–25 of the PSR outline the offense conduct. It will be highlighted here.

The first armed robbery occurred on September 7, 2007. PSR ¶ 11. On that day, Bostic and his two defendants, Terrell Lovelace and Eugene Sutton, and another unknown individual decided to rob the Spring Mart convenience store in

Darlington, South Carolina. *Id.* The four approached the store around 11:00 a.m. *Id.* When they arrived, Lovelace and Sutton remained in the car to serve as both getaway driver and lookout, while Bostic and the unknown individual covered their faces with red and black bandanas. *Id.* ¶¶ 11, 20. A single clerk was working in the store. *Id.* ¶ 11. Bostic and the other robber entered the store, and Bostic—armed with a handgun—demanded the clerk put his hands up, not move, and open the register. *Id.* ¶ 12. The unknown individual proceeded to stand watch by the front window as Bostic jumped over the counter and pointed his gun at the clerk's head. *Id.* The clerk complied with Bostic's demands and opened the register. *Id.*

Bostic removed approximately $500.00 from the register and placed it into a backpack carried by the unknown individual. *Id.* After securing the cash, Bostic then used violence against the clerk who did not resist Bostic's emptying of the cash register. *Id.* Bostic struck the clerk in the forehead with his handgun—knocking the clerk unconscious. *Id.* The clerk fell to the floor. *Id.* Bostic and the unknown individual fled to the getaway car where Sutton and Lovelace were waiting. *Id.* When the clerk awoke, the robbers were gone. *Id.* The clerk suffered physical injury as he was bleeding from his forehead. *Id.* ¶ 13. Ten minutes later, a customer came into the store and found the clerk on the ground. *Id.* An ambulance was called. *Id.* The clerk was taken to the hospital. *Id.* He received stitches to close the wound on his forehead. *Id.*

The second armed robbery occurred two days later on September 9, 2007. *Id.* ¶ 14. At approximately 8:30 p.m., Bostic, Lovelace, and Sutton arrived to rob an

Exxon gas station in Timmonsville, South Carolina. *Id.* This time, Sutton waited in the vehicle as the getaway driver, which Bostic and Lovelace covered their faces in red bandannas. *Id.* They found the clerk sweeping the front of the store, and pointed a firearm at him, demanding he open the register. *Id.* ¶ 15. The clerk complied, opened the register, and knelt on the ground. *Id.* As the robbers were removing cash from the register, a customer approached the checkout counter to pay for an item. *Id.* One of the robbers pointed his firearm at the customer. *Id.* The customer was then robbed when one of the robbers demanded his wallet. *Id.* The customer complied and gave him $41.00 in cash. *Id.*

Before leaving the Exxon, the robbers ran to the store's cooler and grabbed an 18-pack and 6-pack of Budweiser beer. *Id.* ¶ 16. They then backed out of the front door, telling the store clerk and the customer "Don't move or go anywhere." *Id.* Bostic and Lovelace fled the scene in Sutton's waiting getaway car. *Id.* Together, the three stole approximately $200.00 from the register, $41.00 from the customer, and 24 Budweiser beers from the store's cooler. *Id.* ¶ 17.

The third robbery occurred twelve days later on September 17, 2007, when Bostic and Lovelace robbed the Jin Jin Chinese restaurant in Darlington, South Carolina. *Id.* ¶ 18. At approximately 8:45 p.m., Bostic and Lovelace approached the back of the restaurant. *Id.* Again, both covered their faces in red bandanas and armed themselves with handguns. *Id.* When they entered the restaurant, they pointed their firearms at employees and shouted, "Don't move." *Id.* One of the robbers then approached the register and told the employee behind the counter to

open it up. *Id.* While this occurred the other robber stood watch over the employees and the lobby area of the restaurant. *Id.* After the first robber stole approximately $400.00 from the register, the two escaped through the rear of the restaurant. *Id.*

The Court finds it appropriate to discuss a fourth uncharged robbery, which is outlined in the PSR's "Relevant Conduct" section. *Id.* ¶ 25. This robbery occurred on September 28, 2007, and involved Bostic, Lovelace, Sutton, and an unknown individual robbing the Mozingo Grocery in Bishopville, South Carolina. *Id.* Like the other three armed robberies, the four robbers entered the Grocery with their faces covered by red bandanas. *Id.* One of the robbers wielded a handgun and another carried a shotgun. *Id.* The robbers ordered the clerk on the ground and began to remove money from the register. *Id.* During the robbery, one of the robbers forced a customer into the store and held him at gunpoint. *Id.* After securing the cash from the register, the four fled. *Id.*

As noted, Bostic was named in all seven counts of the subsequent Indictment. ECF No. 1. Ultimately, he entered a Rule 11(c)(1)(C) plea agreement and pled guilty to one count charging him with Hobbs Act robbery and one count charging him with a violation of § 924(c). ECF No. 95. As noted, in exchange for Bostic's plea, the Government agreed to drop two counts charging him with violent offenses, Hobbs Act robbery, and two counts charging him with additional § 924(c) violations, and one count charging him with being a felon in possession. *Id.*

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Bostic's motion for compassionate release, the

Court will first review the arguments asserted by both Allen and the Government. *See* ECF Nos. 253, 258 & 256.

### A.   *Bostic's Arguments in Support of His Motion*

Bostic requests that the Court grant his motion because he can establish "extraordinary and compelling" reasons in favor of his release as required by § 3582. ECF No. 295. Specifically, Bostic asserts three grounds purportedly constituting "extraordinary and compelling reasons." *Id.* They are (1) that he is entitled to a reduction in his sentence in light of the First Step Act's "elimination to 'stacking' on § 924(c) convictions," (2) his contention that his § 924(c) conviction is now invalid because Hobbs Act robbery is no longer a "crime of violence" sufficient to establish a § 924(c) violation, and (3) his "'relative youth" at the time he committed the instant federal offenses. *Id.* at 3–12. For relief, Bostic "asserts that the § 3553(a) factors weigh strongly in favor if a sentence of time served." *Id.* at 14.

### B.   *The Government's Opposition*

The Government opposes Bostic's motion on two independent grounds. ECF No. 264. Initially, the Government asserts that Bostic has not presented "extraordinary and compelling reasons" warranting relief. *Id.* at 4. Specifically, the Government argues first, that the First Step Act's changes to § 924(c) would have no impact on Bostic's sentence and second, that Hobbs Act robbery remains a valid § 924(c) predicate offense. *Id.* at 3–5. Additionally, and alternatively, the Government argues that even if Bostic could meet the "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in his

sentence. *Id.* at 10–11.

### III.  THE COURT'S REVIEW

Before filing his motion for compassionate release, Bostic first requested a sentence reduction from the warden of his detention facility. ECF No. 253–2. That request was denied. *Id.* Thus, Bostic has satisfied the administrative exhaustion requirement. *Id.* Therefore, the Court must determine (1) whether Bostic has established the existence of "extraordinary and compelling reasons" favor a sentence reduction under § 3582(c)(1)(A), and (2) if so, whether granting compassionate release is consistent with the sentencing factors set forth in § 3553(a).

### A.    *A Motion for Compassionate Release Cannot Be Used to Collaterally Attack a Defendant's Sentence*

However, before first turning to the "extraordinary and compelling reasons" standard, the Court finds it necessary to discuss Bostic's efforts to collaterally attack both his convictions and sentence via the instant § 3582 motion. In his compassionate release motion, Bostic asserts (1) that "there is no legal basis" for his § 924(c) conviction, (2) that his "sentence was imposed in violation of the Constitution," (3) that his attack on his § 924(c) conviction is cognizable here "as the error at sentencing was of substantive constitutional magnitude," and (4) that his § 924(c) "conviction on Count 5 should be vacated." ECF No. 253 at 4–14. These efforts to collaterally attack his sentence in this § 3582 proceeding may be foreclosed by the Fourth Circuit's decision in *United States v. Ferguson*, 55 F.4th 262, 265 (4th Cir. 2022).

In *Ferguson,* the Fourth Circuit affirmed a district court's denial of a

defendant's § 3582 motion where the defendant "attempt[ed] to collaterally attack his convictions and sentence via a compassionate release motion [.]" *Id.* at 270. The *Ferguson* Court recognized that to allow defendants, like Bostic, to collaterally attack their sentences and convictions in § 3582 proceedings would "ignore[] the established procedures for doing so . . . [n]amely, 28 U.S.C. § 2255[.]" *Id.* Accordingly, the Fourth Circuit held that, "[b]ecause § 2255 is the exclusive method of collaterally attacking a federal conviction or sentence, a criminal defendant is foreclosed from the use of another mechanism, such as compassionate release, to sidestep § 2255's requirements." *Id.* Based on *Ferguson*, to the extent it is applicable, the Court will deny Bostic's motion to the extent he seeks to collaterally attack his conviction and sentence. However, the Court will fully evaluate Bostic's arguments under § 3582's "extraordinary and compelling reasons" standard and when weighing the relevant § 3553(a) factors.

## B.   *The "Extraordinary and Compelling Reasons" Standard*

In reviewing Bostic's three grounds for establishing "extraordinary and compelling reasons," the Court finds that the first two are proper considering the "extraordinary and compelling reasons" standard that applies to the compassionate release analysis. Bostic's third argument related to his youth is more appropriate for consideration when evaluating the § 3553(a) factors. Accordingly, when evaluating the "extraordinary and compelling reasons" standard, the Court will address Bostic's arguments related to (1) the First Step Act's elimination of the "stacking" of § 924(c) penalties, and (2) whether Hobbs Act robbery remains a valid

§ 924(c) predicate offense. Procedurally, Bostic's argument that his age at the time of the instant offenses constitutes an "extraordinary and compelling reason" will be addressed in detail during the Court's review of the § 3553(a) factors.

1.    *Bostic's sentence is not the result of "stacked" § 924(c) convictions.*

Bostic asserts that his he is entitled to a sentence reduction because of the "elimination to § 924(c) 'stacking' provision in Section 403 in the First Step Act of 2018, which changed the nature of illegal sentencing in the statutory language prescribe [sic] in an offense under a crime of violence." ECF No. 253 at 12. This argument is not persuasive here because Bostic's sentence did not result from "stacked" § 924(c) convictions. His sentence was negotiated and imposed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Bostic agreed to a stipulated sentence of 25 years in exchange for dismissal of five of the seven counts in the Indictment.

The First Step Act was passed in December 2018, years after Bostic was sentenced.[1] Before the First Step Act, federal prosecutors could "stack" multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be charged at the same time. As the relevant statute provided, a defendant, like Bostic, who robbed three commercial establishments while brandishing a firearm could be charged with three violations of § 924(c) and, if convicted at trial face a 7-year mandatory minimum as to the first violation, a 25-year mandatory minimum as to the second violation, and another 25-year mandatory minimum for the third violation, said sentences to run consecutively. In

---

[1] *See* First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5222.

2018, Congress modified § 924(c) to provide that the 25-year mandatory minimum penalty *prospectively* applies to a "second or subsequent" § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222.

Since the passage of the First Step Act, federal inmates have moved for compassionate release based on the disparity between "stacked" 924(c) sentences imposed before the First Step Act and the sentences they would receive today based on the same offense conduct. The Fourth Circuit has since held that district courts can consider the First Step Act's § 924(c) change when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *McCoy*, 981 F.3d at 285–86. The Fourth Circuit recently noted in *United States v. Brown* that "Congress did not make this change to § 924(c) retroactive [but concludes] § 3582(c)(1)(A) allow for 'individual relief' based on a § 924(c) sentencing disparity 'in the most grievous cases." ____F.4th____, 2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023).

Turning to Bostic's argument asserting that these changes to § 924(c) constitute an "extraordinary and compelling reason" for a reduction in his sentence, the Court acknowledges the First Step Act's prospective elimination of the "stacking" of sentences under to § 924(c). Bostic asserts that these changes were made retroactive, but, as noted, Congress did not make the First Step Act's § 924(c) change retroactive.[2] *See* § 403(b), 132 Stat. at 5222 ("This section, and the

---

[2] Nevertheless, the Court recognizes that this change must still be considered when evaluating a motion for compassionate release. *See McCoy*, 981 F.3d at 284.

amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment.*") (emphasis added). Regardless, the First Step Act's changes to § 924(c) are inapplicable to the sentence imposed in Bostic's case. Simply put, Bostic's sentence is not the result of "stacked" § 924(c) convictions. A "stacked" sentence requires at least *two* § 924(c) convictions. Here, Bostic pled to only the *one* § 924(c) charge in Count 5. He sentence is thus not the result of "stacked" § 924(c) convictions.

The Court notes, moreover, that Bostic's sentence was a product of a negotiated 11(c)(1)(C) plea agreement, which stipulated to the sentence received of 25 years. Bostic acknowledged as much when the Court reviewed the terms of his plea agreement in detail with him at his change of plea hearing:

| | |
|---|---|
| THE COURT: | You also are pleading guilty to a stipulated sentence. Paragraph 11 states that the Government and the Defendant stipulate and agree that, pursuant to Rule 11(c)(1)(C), the Defendant will receive a sentence of 25 years. If that sentence is not imposed, you would have the right to withdraw your plea. Do you understand that provision in your plea agreement, Mr. Bostic? |
| DEFENDANT BOSTIC: | Yes, sir. |
| THE COURT: | And do you understand that you are pleading guilty to 25 years in your case, if I accept the plea to 25 years? Again, do you understand that? |
| DEFENDANT BOSTIC: | Yes, sir. |

ECF 128 at 15:22–16:10. Accordingly, the Court concludes that Bostic cannot establish "extraordinary and compelling reasons" based on the First Step Act's changes to the "stacking" of § 924(c) convictions because his sentence is not the result of "stacked" § 924(c) convictions. Assuming that his position meets the "extraordinary and compelling reasons" standard, no relief is warranted. Additionally, if "stacking" was a factor in reaching the 11(c)(1)(C) stipulated sentence of 25 years in the plea agreement, it was clearly a plea agreement that was crafted in light of Bostic's violent conduct in connection with the armed robberies and the violence he used in committing those robberies.

### 2.    _Hobbs Act robbery remains a valid § 924(c) predicate._

Bostic next argues that he can establish "extraordinary and compelling reasons" because "the Hobbs Act Robbery charge (Count 2) underlying the § 924(c) offense of conviction (Count 5), categorically fails to qualify as a crime of violence within the meaning of 18 U.S.C. § 924(c)(3)(A) and (B), and the residual clause of § 924(c)(3)(B) is unconstitutionally vague under _Johnson_." ECF No. 253 at 4. More specifically, Bostic asserts that Hobbs Act robbery can no longer serve as a predicate offense for § 924(c) because, "pursuant to § 1951, the offense can be committed by putting one in fear of future injury to his person or property and not violent physical force." _Id._ at 6. This argument fails as a matter of law.

In _United States v. Mathis_, the defendant-appellants argued, like Bostic, "that because Hobbs Act robbery can be committed by placing a victim in fear of injury, the offense does not necessarily include as an element the 'use, attempted

use, or threatened use of force[.]'" 932 F.3d 242, 265 (4th Cir. 2019), *cert. denied sub nom. Uhuru v. United States*, 140 S. Ct. 640 (2019). The Fourth Circuit rejected this argument, holding that Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a), "categorically" qualifies as a crime of violence under the force clause of 18 U.S.C. § 924(c). *Id.* at 266. In reaching this decision, the *Mathis* Court concluded that Hobbs Act robbery requires the use, attempted use, or threat of physical force, even when the offense only involves "fear of injury," because that term is synonymous with "intimidation," which necessarily "involves the threat to use [physical] force." *Id.* Based on the Fourth Circuit's ruling in *Mathis*, the Court concludes that Bostic cannot establish "extraordinary and compelling" reasons on this basis because his conviction on Count 1 for Hobbs Act robbery categorically qualifies as a crime of violence in support of his § 924(c) conviction on Count 5. *See United States v. Bennett*, 848 F. App'x 596, 597 (4th Cir. May 29, 2021) (unpublished) (holding that Hobbs Act robbery is a valid § 924(c) predicate, citing *Mathis*); *United States v. Vanderhorst*, No. 18-4717, 2021 WL 2947728, at *3 (4th Cir. July 14, 2021) (same).

### B.    *The Court's review of the § 3553(a) factors*

Assuming Bostic were able to establish "extraordinary and compelling reasons," the Court concludes that it would still be appropriate to deny his motion based on its analysis and balancing of the § 3553(a) factors. The Court has balanced those factors in light of the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

The Court will first address Bostic's arguments regarding his youth at the

time of his federal offenses. Specifically, he asserts that "Bostic's 'relative youth' of 20 years old of age when he was arrested by the United States Marshall [sic] Service in the current federal prosecutions now provides the opportunity to have lengthy sentences reconsidered." ECF No. 253 at 3–12. This argument goes to § 3553(a)(1), which asks the Court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

The Court has given consideration to Bostic's age at the time the robberies were committed. However, it is not persuaded by Bostic's argument in light of the number of robberies committed, the fact that Bostic was armed, and the fact that Bostic inflicted physical violence on victims causing injury. As well, the Court concludes that § 3553(a)(1) weighs against a reduction in his sentence. Any argument as to Bostic's youth being a basis for a reduction in his sentence is rebutted by the significant criminal record he accumulated before committing the instant federal offense. First, in October 2003—at age 15—Bostic was convicted of unlawful carrying a pistol and discharging a firearm in city limits. PSR ¶ 29. As detailed in the PSR, Bostic and his codefendants possessed a .25 caliber pistol and fired it within the city limits of Darlington, South Carolina. *Id.* For these convictions, Bostic was committed to the South Carolina Department of Juvenile Justice ("DJJ") Evaluation Center, which was suspended to 6 months DJJ probation. *Id.* However, Bostic's probation was revoked after two months for failure to abide by a school attendance order. *Id.* He was then committed to the DJJ for approximately 60 days. *Id.*

Two years later, at 17, Bostic committed further criminal conduct, which again involved possession of a firearm. *Id.* ¶ 30. Specifically, he was convicted of two counts of common law robbery. *Id.* The facts surrounding these offenses warrant further discussion here. The first robbery occurred on April 21, 2005, when Bostic, while armed with a handgun, robbed an individual by means of force or intimidation of approximately $20.00. *Id.* The second robbery took place four days later. *Id.* In that robbery, Bostic, through force or intimidation, robbed the Jin Jin Chinese Restaurant of approximately $300.00. *Id.* This is the same restaurant Bostic would later rob as part of the instant federal offense conduct. For these crimes, Bostic received a Youthful Offender Act ("YOA") sentence not to exceed 6 years. *Id.* Notably, he committed the instant offense conduct while out on YOA parole.

Despite previously serving two sentences of incarceration, Bostic was not deterred from committing further *escalating* criminal conduct. Approximately five months after his release on YOA parole, Bostic and his codefendants committed the three violent armed robberies giving rise to the instant federal charges. Based on his prior criminal conduct, and considering the violent offense conduct committed, the Court is unpersuaded by Bostic's argument that his purported youth at the time of the commission of the three violent armed robberies discussed herein is a basis for a reduction in his sentence. This conclusion is supported by Bostic's prior failure to abide by the terms of his YOA parole and his continued willingness to commit *escalating*, violent conduct despite previously serving sentences of incarceration.

This conduct shows a distinct lack of respect for the law. Accordingly, for the reasons stated, the Court concludes that § 3553(a)(1) weighs against a reduction in Bostic's sentence.

When weighing the § 3553(a) factors, it is next appropriate to review the facts surrounding Bostic's instant offenses. That conduct is discussed in significant detail in Paragraphs 10–25 of the PSR, which the Court incorporates by reference. While this order previously set forth that conduct, the Court will highlight the relevant portions again here. As noted, Bostic committed three violent armed robberies. During these robberies, Bostic and his codefendant possessed and brandished firearms in furtherance of violent crime. During the first robbery, Bostic violently assaulted a store clerk, knocked him unconscious, and caused him great physical injury, which required medical treatment to address the wound to his forehead. During the second and third robberies, Bostic and his codefendants pointed firearms at store clerks, restaurant employees, and customers. These victims were placed in great fear of their personal safety and fear of being harmed by Bostic and the others involved in the robberies. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh heavily against a reduction in Bostic's sentence. *Contra Brown*, 2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Bostic clearly committed violent crime— he directly assaulted a robbery victim and threatened his other victims with

physical harm. This conduct makes it clear that Bostic would pose a great risk to the public if the Court were to reduce his sentence.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses and Bostic's prior criminal history demonstrate his propensity to engage in repeated criminal conduct and commit acts of violence. His actions also demonstrate a distinct disrespect for both the law and the safety of others. As outlined above, Bostic's conduct during the three armed robberies was egregious and violent. The sentence imposed was—and is—necessary to (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, and (4) afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6), which analyzes the kinds of sentences available, the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. In considering these factors, the Court gives great weight to the parties' plea negotiations and the resulting plea agreement. Bostic pled guilty to two counts of the indictment and received a 25-year sentence pursuant to a Rule 11(c)(1)(C) agreement. In exchange for his plea, the Government agreed to dismiss five of the seven counts, namely, Counts 2 and 3, charging Bostic with Hobbs Act robbery, Counts 4 and 6, charging him with violations of § 924(c), and Count 7, charging him with being a felon in possession.

Today, on the same two counts Bostic would face a lower guideline sentence. Bostic now contends that he is entitled to a reduced sentence of time served. A lower guideline range has limited relevance in his case. The Court concludes a reduction

on that basis ignores the parties' negotiated plea agreement, which considered Bostic's significant criminal conduct and the violence he used. As noted at both Bostic's change of plea hearing and his sentencing hearing, the Government sought a significant sentence against Bostic, and a stipulated sentence pursuant to Rule 11(c)(1)(C) was the appropriate way to accomplish that in light of three violent armed robberies he committed. As noted, in exchange for his plea, the Government dismissed five counts for which Bostic faced a *significant* sentence. The Court cannot ignore this bargained for exchange, and judicial restraint now counsels against disturbing the parties' carefully negotiated 11(c)(1)(C) plea agreement. *United States v. Bond*, 56 F.4th 381, 385 (4th Cir. 2023) (affirming the district court's denial of a § 3582 motion on the basis "that modifying the sentence would disturb the parties' carefully negotiated agreement") (cleaned up); *see also United States v. Jackson*, No. CR 3:16-69-JFA, 2022 WL 3908671, at *3 (D.S.C. Aug. 30, 2022) ("However, all of these changes in the sentencing laws are of no significance in this case. The defendant pleaded guilty in a written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), which provided for an agreed upon sentence [.]"). After all, Bostic received the exact sentence he bargained for in the plea agreement: 25 years. The Court has thus given careful consideration to this issue and §§ 3553(a)(3)-(6) and concludes that those factors do not favor release.

As to the remaining factors, the Court notes that its conclusion that Bostic would pose a great risk to the public if released is buttressed by the significant—and violent—disciplinary history he has accumulated while in BOP custody. Since

his sentencing in 2009, Bostic has accumulated *forty-nine* disciplinary infractions, some of which occurred after he filed his motion for compassionate release. ECF No. 264–1. Of note, these infractions include (1) twelve infractions for refusing to obey an order, (2) seven infractions for possession of a dangerous weapon, (3) seven infractions related to the destruction of property, (3) six drug and alcohol related infractions arising out of the possession, use, and even importation of various narcotics including marijuana, amphetamines, and opiates, (4) two infractions for threatening corrections officers, (5) two infractions for highly disruptive conduct, (6) one infraction for assault, and (7) one infraction for setting a fire. *Id.* The Court concludes that this extensive disciplinary history also weighs against release and shows a continuing disrespect. Bostic would pose a significant risk to the safety of the public if released as illustrated by both the instant offense conduct, his past criminal record, and has accumulation of disciplinary infractions while incarcerated.

The Court has carefully weighed the relevant § 3553(a) factors and bases its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. Bostic committed three violent armed robberies where he brandished illegal firearms, knocked a store clerk unconscious, and threatened to harm additional victims. His conduct was egregious, serious, and significant. When coupled with his prior criminal history and his continued disciplinary issues while incarcerated, the record before the Court clearly demonstrates Bostic's disregard for both the safety of others and the law. Based on the above analysis, the Court finds

that the § 3553(a) factors weigh against Bostic's request for relief and lead to the conclusion that he would pose a substantial risk to the public's safety if released. Accordingly, the Court concludes a sentence reduction is not appropriate.

## CONCLUSION

The Court concludes that Bostic's motion for compassionate release should be denied. He has not established "extraordinary and compelling reasons" warranting relief. Additionally, even if he had, his motion would still be denied based on the Court's analysis and balancing of the § 3553(a) factors. Accordingly, Bostic's Motion, ECF No. 253, is denied.

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

September 25, 2023
Columbia, South Carolina